Wilma Faye HATTON, As Guardian of
Paul D. King, Plaintiff–Appellant,

v.

FRATERNAL ORDER OF EAGLES,
AERIE # 4097, Nip and Sip, Inc., Moose
Lodge # 576, Gerald E. Charles, Sam
Nowling, Ray Mullikin, Tom Bowerly,
Fred Robinson, As a Representative
Group for the Entire Membership of
Fraternal Order of Eagles, Aerie
# 4097, Defendants–Appellees.

No. 16A01–8907–CV–262.

Court of Appeals of Indiana,
First District.

March 22, 1990.

John H. Caress, John H. Caress, Jr., In-
dianapolis, for plaintiff-appellant.

Michael V. Gooch, Timothy J. Hulett,
Harrison & Moberly, Richard A. Young,
John B. Drummy, Kightlinger & Gray, In-
dianapolis, for defendants-appellees.

BAKER, Judge.

The dispositive issue in this appeal is one
of first impression in our state. Restated,
the question we must answer is whether
the individual members of an unincorporat-
ed association who are not officers, di-
rectors, or specific individuals involved in a
sale or serving of alcoholic beverages are
individually liable to a third party who is a
non-member of that association and who is
injured as a proximate result of the negli-
gent sale and serving of alcoholic beverag-
es by the association's agents, servants, or
employees in the association's bar.[1]

Plaintiff-appellant, Wilma Faye Hatton
(Hatton), as guardian of Paul D. King
(King) appeals the trial court's granting of
summary judgment in favor of defendant-
appellees, the individual members of the
Fraternal Order of Eagles Aerie # 4097
(the members).[2]

The Fraternal Order of Eagles Aerie
# 4097 (the Eagles), also a defendant in
this case, is an unincorporated voluntary
association. The Eagles holds a liquor li-
cense to serve alcoholic beverages. As of
June 21, 1985, the Eagles had approximate-
ly 238 members.

On June 21, 1985, King was driving his
motorcycle when he was struck by an auto-
mobile driven by James W. Halbert (Hal-
bert). The collision caused severe and per-
manent injuries to King, rendering him a
hemiplegic requiring institutional care 24
hours a day for the rest of his life. Prior

1. The association members who are not officers
or directors also challenge whether personal
jurisdiction had been secured over them. The
trial court had permitted service of process on a
representative group approved by the trial
court, pursuant to Ind. Trial Rule 23.2. Due to
our disposition of the liability issue, we are not
required to answer the association members'
inquiry on this issue.

2. Summary judgment was granted in favor of
all the individual members except the directors.

to the accident, Halbert was served alcoholic beverages at the Eagles.

On February 7, 1986, Hatton, as guardian of King, filed a complaint against the Eagles.[3] On August 11, 1986, Hatton petitioned the trial court for the designation of representatives of an unincorporated association for the purpose of obtaining personal jurisdiction over each individual member of the Eagles. On November 10, 1986, the trial judge ordered the designation of such representatives. Hatton filed a second amended complaint on November 25, 1986, and named the directors as the representative group for the entire membership of the Eagles.

On August 16, 1988, the individual members of the Eagles filed motions for summary judgment. A hearing was held, and the trial court granted the individuals' motions for summary judgment. Hatton now appeals.

Disposition of a case by summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing the propriety of a summary judgment, this court applies the same standard as the trial court. *Ogden Estate v. Decatur County Hosp.* (1987), Ind.App., 509 N.E.2d 901, *trans. denied.* We examine the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed with the court in the light most favorable to the non-moving party. *Chambers v. Central School District School Bd. of Greene County* (1987), Ind.App., 514 N.E.2d 1294. The proponent bears the burden of establishing the propriety of the motion. *Kidd v. Davis* (1985), Ind.App., 485 N.E.2d 156.

For the purposes of this appeal, the parties have stipulated that the association's servants negligently provided alcoholic beverages to Halbert and as a proximate result, King suffered injuries. This stipulation is important because Indiana law generally requires at least negligent fault by a defendant as a prerequisite to liability. Negligence is the "failure to exercise that degree of care which a person of ordinary prudence would exercise under like circumstances." *Southern Ry. Co. v. Harpe* (1945) 223 Ind. 124, 129, 58 N.E.2d 346, 348. A negligent act or omission must be directed toward the person or property of the plaintiff or others to constitute fault. IND. CODE 34-4-33-2.

These definitions restate the foundational requirements of our law of negligence. For liability to arise, there must be: (1) a duty on the part of the defendant to conform his conduct to a standard of care necessitated by his relationship with the plaintiff; (2) a breach of that duty; and (3) an injury that the plaintiff suffered as a result of that failure. *Dibortolo v. Metropolitan School District of Washington Township* (1982), Ind.App. 440 N.E.2d 506, 509. Today we must determine the extent and nature of the duty owed by the association's individual members who are not officers or directors. Since it is not the activity of the individual members with which we are concerned, it must be determined whether liability for King's damages may be imputed to the individual members under what is sometimes called vicarious liability or imputed negligence. This principle is often given the Latin of *respondeat superior.* Prosser & Keaton, *The Law of Torts* at 499 (5th ed.1984).

Initially, Hatton claims an unincorporated association must be treated as a partnership. Hatton cites *Karges Furniture Co. v. Amalgamated Woodworkers Local Union 131* (1905), 165 Ind. 421, 75 N.E. 877, in support of this proposition. We note, however, that the Uniform Partnership Act, defines "partnership" as "... an association of two or more persons to carry on as co-owners of business *for profit.*"[4] IND.

---

3. Ind. Trial Rule 17(E) allows unincorporated associations to sue or be sued in their own name.

4. Prior to the adoption of the UPA, Indiana case law held that voluntary unincorporated associations are not considered partnerships because they are not in business for profit. *Cochran v. Boleman* (1903), 162 Ind. 659, 71 N.E. 47.

CODE 23–4–1–6 (emphasis added). The record reveals that the Eagles is a not-for-profit unincorporated association. Record at 33. Therefore, the UPA does not apply and Hatton's argument must fail.

To support Hatton's claim that the negligence of each member of the unincorporated association is imputable to each and every member of that unincorporated association, Hatton cites *Calvary Baptist Church v. Joseph*, (1988), Ind., 522 N.E.2d 371, and *Maroney v. FOP Lodge # 71* (1989), Ind.App., 546 N.E.2d 99. Both of these cases involved situations where a member of an unincorporated association was injured by another member's negligence while working on the association's property. The injured parties then brought suit against their respective associations alleging the association was negligent through the conduct of another member of the association. In both cases, the court held that members of an unincorporated association cannot sue the association for tortious acts of one or more of its members. *Calvary Baptist, supra,* at 374; *Maroney, supra,* at 100. These cases are inapplicable, however, in that here we are dealing with a non-member third party suing the individuals of the association rather than a member suing the association itself.

Hatton asserts that the individual members are liable for the injuries to King because the negligence of the person who served Halbert is imputed to each member of the Eagles. The members, on the other hand, argue that individually they had ab-solutely no control over the person who negligently served Halbert, and as a result, no liability should be upon them.

To impute tort liability to an individual member of an association under the principle of *respondeat superior,* a principal-agent or employer-employee relationship must exist. *Delk v. Bd. of Com'rs of Deleware County* (1987), Ind.App., 503 N.E.2d 436, 440. The key element in establishing a principal-agent or employer-employee relationship is the ability of that principal or employer to control the work of the agent or employee. *Id.; Furr v. Review Bd. of Indiana Employment Sec. Div.* (1985), Ind.App., 482 N.E.2d 790. Without the ability to control the agent-employee's actions, the required relationships do not exist and as a result, no liability will be imputed to the alleged principal-employer.[5]

The by-laws of the Eagles provided that "the Board [of Trustees] shall have charge of the maintenance and operation of the home, club rooms, and buffet belonging to the Aerie, and shall employ, discharge and control the conduct and duties of all employees of the Aerie." *Supplemental Record* at 28. All decisions concerning the operation of the Eagles were made by the Board. None of the individual members had any authority to formulate rules or policies concerning the operation of the club room or the serving of alcoholic beverages. None of the individual members ever participated in decisions concerning the hiring, firing, or supervision of the Eagles' employees. It is undisputed that

---

**5.** The rule we announce today ensures association members will not be held liable simply by virtue of their membership. To hold otherwise would be contrary to our concept of fault based negligence. Other jurisdictions have similar requirements for the imposition of liability upon association members. *See* e.g., *Guyton v. Howard* (1988), Fla.App., 525 So.2d 948, 956 (requiring an association member's "direct active negligence"); *Expert Electric, Inc. v. Levine* (2nd Cir.1977), 554 F.2d 1227, 1235 (citing federal cases requiring a member's knowledge or ratification of an association's wrongful acts); *Orser v. George* (1967), 252 Cal.App.2d 660, 671, 60 Cal.Rptr. 708 (requiring a member's participation, knowledge, or approval of the association's wrongful acts); *Lyons v. American Legion*

*Post No. 650 Realty Co., Inc.* (1961), 172 Ohio St. 331, 337, 175 N.E.2d 733, 737 (requiring a member's "active participation"); *Sweetman v. Barrows* (1928), 263 Mass. 349, 161 N.E. 272 (holding liable a labor union's officers and members who assented to the plaintiff's illegal expulsion from the union and releasing from liability those members who were not present and did not consent).

While we approve of the above requirements, we do not adopt them here. The Eagles' by-laws vested the Board with the authority to control and the *respondeat superior* theory is the proper mode of analysis. We cite these cases for the general proposition that the mere fact of association membership will not normally result in liability.

the individual members never exerted any control over the Eagles' bartender or other employees. Therefore, since the individual members had no degree of control, the negligence of the employees cannot be imputed to them.

The trial court properly granted the individual members' motions for summary judgment and its judgment is affirmed.

RATLIFF, C.J., and CHEZEM, P.J., concur.